**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3825-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEMAR O. MAY, a/k/a
JEMAR A. MAY,

     Defendant-Appellant.

_____

Submitted February 4, 2026 – Decided April 16, 2026

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 19-07-1947.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Jemar O. May appeals from a June 28, 2024 order denying his petition for post-conviction relief (PCR). We affirm.

In January 2019, defendant pleaded guilty to an amended charge of second-degree aggravated assault and second-degree unlawful possession of a handgun. In the plea agreement, the State had agreed to recommend a sentence of five years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2 on the aggravated-assault charge and a concurrent five-year sentence on the unlawful possession charge consistent with the Graves Act, N.J.S.A. 2C:43-6(c).

However, after the entry of the plea, the victim died. A superseding indictment charged defendant with: first-degree murder, N.J.S.A. 2C:11-3(a)(l)(2) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three).

In January 2022, pursuant to a negotiated plea agreement, defendant pled guilty to count one, as amended to aggravated manslaughter, N.J.S.A. 2C:11-4(a)(l), and count two, second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(b)(1). In exchange, the State agreed to dismiss count three and recommend a twenty-year term of imprisonment subject to an

eighty-five percent period of parole ineligibility pursuant to NERA, followed by five years of parole supervision.

During the plea hearing, the court informed defendant that "the State is offering you a plea t[hat] is not purposeful and knowing murder as charged in the indictment. It's an aggravated manslaughter." Defendant confirmed his understanding of the charges and his guilty plea. The transcript of the plea hearing reveals that in response to the court's questions, defendant confirmed he had signed the plea agreement after reviewing each question with his counsel, he agreed with each answer, and each answer was truthful.

Trial counsel then elicited a factual basis for the plea before the court, establishing that on January 1, 2018, defendant had possessed "a loaded and operable handgun" without a permit and discharged the weapon at the victim. The transcript further reveals the following exchange:

> [TRIAL COUNSEL]: And . . . you fired that gun . . . [at the victim] . . . ?
>
> [DEFENDANT]: Yes.
>
> [TRIAL COUNSEL]: Okay. And you . . . didn't intend to cause him . . . death, but you intended to cause him physical injury, correct?
>
> [DEFENDANT]: Yes.

3

[TRIAL COUNSEL]:  And as a result of the injuries, [the victim] eventually . . . died from those injuries from the gunshot wounds on January 1, 2018.[1]

[DEFENDANT]:  . . . Yes.

[TRIAL COUNSEL]:  Anything further?

[THE STATE]:  Yeah. . . . [Y]ou do admit that your actions recklessly caused the death of [the victim].  Is that correct?

[DEFENDANT]:  Yes.

[THE STATE]:  And . . . you fired the weapon a couple of times in his direction.  Is that correct?

[DEFENDANT]:  Yes.

[THE STATE]:  Did you appreciate at that point, that you would, in fact, by shooting that and if you hit him, cause serious bodily injury?

[DEFENDANT]:  Yes.

[THE STATE]:  Thank you.  I have no further questions.

THE COURT:  Alright.  [Trial counsel], . . . are you satisfied that your client's plea is voluntary and I should accept it?

[TRIAL COUNSEL]:  Yes, I am, Your Honor.

THE COURT:  Alright.  I am also satisfied that [defendant] has provided a sufficient factual basis for

---

[1]  The record reflects the victim died on March 8, 2019.

4

the [c]ourt to accept guilty pleas [as] to counts[]1 and 2 of indictment 2019-7-1947. Count[]1, as amended to aggravated manslaughter, in violation of [N.J.S.A.] 2C:11-4(1), and count[]2, second-degree unlawful possession of a weapon, in violation of [N.J.S.A.] 2C:35-5(b).

I'm satisfied he has[,] after the advice of competent [trial] counsel with whom he is satisfied[,] entered his plea freely and voluntarily, that he admitted the offense on the date and place complained of in the indictment, and he committed the offense as alleged.

[(Second to last omission in original).]

In March 2022, the court sentenced defendant to a twenty-year term of imprisonment, subject to NERA, followed by a five-year mandatory period of parole supervision on count one. The court also imposed a concurrent ten-year term of imprisonment on count two, subject to the Graves Act in accordance with the negotiated plea agreement.

In April 2022, defendant filed a self-represented petition for PCR. In March 2023, assigned counsel filed a brief in further support of the petition.

In March 2024, the PCR court heard the parties' arguments on the petition. In its March 12, 2024 order, the court granted "an evidentiary hearing . . . limited . . . to the issue of whether defendant request[ed] trial counsel [to] file an appeal and trial counsel did not file such . . . appeal." In its accompanying statement of reasons, the court found "there is a factual question raised in a single sentence

in . . . defendant's certification about whether the appeal was requested and not filed."

On June 10, 2024, the PCR court held the limited evidentiary hearing. The court heard testimony from defendant and his trial counsel and admitted a number of exhibits into evidence.

In its June 28, 2024 order, the court denied defendant's petition for PCR. In an accompanying statement of reasons, the PCR court stated trial counsel, who had a "thirty-year career as a criminal defense attorney," had "recalled [defendant]'s matter" and testified "without reference to any documents." The court found trial counsel had credibly "testified that [defendant] did not request that he file an appeal." The court considered trial counsel's testimony that the Office of Public Defender (OPD) disposition process included the completion of a "disposition and billing form." The form contains a "checklist" with "a place to note if an appeal is to be filed." The court found trial counsel "testified credibly that he would not have completed that for[m] and indicated no [in] the appeal section . . . if an appeal was requested." Instead, according to trial counsel, "[a] different form would have been completed and the file sent to the appellate section."

The PCR court found trial counsel's testimony was "credible." The court described that trial counsel had "answered the questions in detail, had good recall, and his demeanor was direct and forthright." Further, the court found trial counsel's testimony was corroborated by "documentary evidence," specifically the OPD's "disposition and billing form."

On the contrary, the PCR court found defendant's "testimony was not specific, he could not recall when he made the appeal request, and claimed it was on the record, though th[e] court found no corroboration in the recording." In addition, defendant "did not claim to have had a private discussion with [trial counsel] about an appeal or to have made any written request, despite having been advised by this court of his appeal rights on the record."

The PCR court concluded "as a matter of fact . . . no appeal request was made. In the absence of such a request, [trial counsel] cannot be found ineffective on that point."

The PCR court also considered defendant's contentions regarding "the use of leading questions by trial counsel and the prosecutor to elicit the factual basis" for his plea. The court stated that "[t]he use of leading questions is permitted when a factual basis for a plea is elicited," (citing State v. Smullen, 118 N.J. 408 (1990)). Further, the court stated "[i]t is inconsequential that defendant did not

provide an adequate factual basis in narrative form."  Indeed, the court noted "[l]eading questions may be necessary to ensure an adequate factual basis for the guilty plea," (quoting State ex rel. T.M., 166 N.J. 319, 335 (2001)), and a "trial court's inquiry need not follow a 'prescribed or artificial ritual,'" (quoting T.M., 166 N.J. at 327).

In considering defendant's plea, the PCR court found defendant's "answers to questions from his [trial] counsel and the court were sufficient to establish that he committed the charged offenses."  The court found trial counsel's

> questioning established . . . defendant's presence in Park Avenue in Orange on January 1, 2018, his possession of a loaded and operable handgun, his lack of permit, and that he fired the gun at the victim not intending to cause death but to injure him. [Defendant] further acknowledged that the victim later died of those wounds, thus accepting the medical examiner's conclusions based on the discovery.  [Defendant] . . . acknowledged that his actions recklessly caused the victim's death, that he fired the gun toward the victim "a couple of times," and that he appreciated that if he hit the victim, it could cause serious bodily injury, in response to the prosecutor's questions.  This court took the plea, was satisfied then, as it is now, that there was an adequate factual basis establishing all material elements of the offenses.

The PCR court concluded, defendant had failed to establish trial counsel's representation was deficient.

A-3825-23

Defendant submits the following argument on appeal:

> [HE] IS ENTITLED TO RELIEF ON HIS CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A DIRECT APPEAL AND IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT DURING THE FACTUAL BASIS OF HIS PLEA.

As to defendant's argument that trial counsel was ineffective for failing to file a direct appeal, he contends the PCR court erred in finding, in fact, he had not requested trial counsel file an appeal. In addition, defendant argues the court erred as a matter of law by "stopp[ing] its analysis short." Defendant contends trial counsel had a duty to consult him about filing an appeal. He argues it was "rational [he] would want to appeal" and it was "reasonably demonstrated to [trial] counsel that he was interested in appealing," (citing <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000)). To support this contention, defendant asserts he did not understand various issues regarding his case.

As to his claim that counsel was ineffective during his plea colloquy, defendant contends he was entitled to an evidentiary hearing because he "did not say anything, other than yes or no, in response to questions by his [trial counsel] or the prosecutor," (citing <u>State v. Fisher</u>, 132 N.J. Super. 313, 315 (App. Div. 1975)).

PCR "is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). It "provide[s] a built-in 'safeguard that ensures that a defendant [i]s not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

"A petition for [PCR] is cognizable if based upon . . . [a s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.] . . . " R. 3:22-2(a). "Those accused in criminal proceedings are guaranteed the right to counsel to assist in their defense." State v. Gideon, 244 N.J. 538, 549 (2021) (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10). "[I]t is not enough '[t]hat a person who happens to be a lawyer is present at trial alongside the accused,' rather, the right to counsel has been interpreted by the United States Supreme Court and [the New Jersey Supreme] Court as 'the right to the effective assistance of counsel.'" Id. at 550 (second alteration in original) (citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 685-86 (1984)).

The right to the effective assistance of counsel extends to legal assistance related to the entry of a guilty plea. See State v. Gaitan, 209 N.J. 339, 350-51 (2012) ("It is well established that the Strickland standard applies with equal

force to assertions of ineffective assistance of counsel associated with the entry of guilty pleas . . . ."). The right to the effective assistance of counsel similarly extends to appeals. See Flores-Ortega, 528 U.S. at 489 ("[I]f a defendant requests counsel to file an appeal, a lawyer who fails to do so is, without more, ineffective.").

To establish a prima facie case of ineffective assistance of counsel, a defendant must satisfy the two-prong test established in Strickland, 466 U.S. at 687. See also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[2] Strickland, 466 U.S. at 687. "[A] court

---

[2] The Sixth Amendment to the Constitution of the United States provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under "the 'second, and far more difficult, prong,'" a defendant must show that his or her defense was prejudiced. Gideon, 244 N.J. at 550 (quoting Preciose, 129 N.J. at 463). The defendant must demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "Prejudice is not to be presumed." Gideon, 244 N.J. at 551 (citing Fritz, 105 N.J. at 52). "The defendant must 'affirmatively prove prejudice.'" Ibid. (quoting Strickland, 466 U.S. at 693).

If defendant fails to "make[] both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

A defendant "must establish the right to [PCR] by a preponderance of the credible evidence." Preciose, 129 N.J. at 459 (citing State v. Mitchell, 126 N.J.

_____

Article I, Paragraph 10 of the Constitution of the State of New Jersey provides: "In all criminal prosecutions the accused shall have the right . . . to have the assistance of counsel in his defense."

12

565, 579 (1992)).  "R[ule] 3:22-1 does not require evidentiary hearings to be held on [PCR] petitions [and] R[ule] 3:22-10 recognizes judicial discretion to conduct such hearings."  State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).  An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1986)).

Nevertheless, PCR "courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of" PCR.  Preciose, 129 N.J. at 462.  "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim."  Id. at 462-63.  "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim . . . will ultimately succeed on the merits.'"  State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)).  A defendant "must do more than make bald assertions that he was denied the effective assistance of counsel."  Cummings, 321 N.J. Super. at 170.

When a PCR court holds an evidentiary hearing, the "standard of review is necessarily deferential to a PCR court's factual findings based on its review of live witness testimony. In such circumstances [the appellate courts] will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Nash, 212 at 540. "[A]lthough '[t]he factual findings underpinning the[] legal conclusions are reviewed for clear error,' [a court's] credibility determinations are given greater deference unlike the evaluation of the documentary record." State v. Harris, 181 N.J. 391, 420 (2004) (second and third alteration in original) (citation omitted) (quoting Burkett v. Fulcomer, 951 F.2d 1421 (3d Cir. 1991)).

However, when the PCR court does not hold an evidentiary hearing, it "is within [the] appellate authority" "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421; see also State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020) ("Where . . . the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo.").

In Flores-Ortega, the United States Supreme Court considered whether "counsel [was] deficient for not filing a notice of appeal when the defendant ha[d] not clearly conveyed his wishes one way or the other[.]" 528 U.S. at 477;

see also State v. Carson, 227 N.J. 353 (2016) (adopting the Flores-Ortega standard). In rejecting a per se rule, the Court considered: "whether counsel in fact consulted with the defendant about an appeal." Id. at 478. The Court "employ[ed] the term 'consult' to convey a specific meaning -- advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Ibid. When "counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Ibid.

However, when "counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Ibid. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when . . . either (1) . . . a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) . . . [a] particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

A-3825-23

The Court held:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.
>
> [Ibid.]

"A defendant who enters a plea of guilty 'simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.'" State v. Urbina, 221 N.J. 509, 525 (2015) (quoting McCarthy v. U.S., 394 U.S. 459, 466 (1969)).

Rule 3:9-2 instructs courts not to accept a plea of guilty

> without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed

16

on the record, and with an understanding of the nature of the charge and the consequences of the plea.

"Indeed, 'it is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail.'" Urbina, 221 N.J. at 526 (quoting State v. Campfield, 213 N.J. 218, 236 (2013)). "The 'court must be satisfied from the lips of the defendant,' that he committed every element of the crime charged." Ibid. (citations omitted) (quoting Smullen, 118 N.J. at 415) (internal quotation marks omitted).

The purpose of this factual foundation is two-fold. "First, the factual basis enables a judge to 'ascertain the plea's voluntariness.'" Id. at 526 (quoting McCarthy, 394 U.S. at 466). "Second, the requirement of a factual basis helps 'to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" Id. at 526-27 (quoting State v. Barboza, 115 N.J. 415, 421(1989)).

In Smullen, the defendant "furnished the factual basis for the plea as a result of leading questions," and the Court was "satisfied that taken in the context of the entire plea colloquy . . . there was an adequate factual basis for the plea." 118 N.J. at 415.

17

"Challenges to the sufficiency of the factual basis for a guilty plea are most commonly brought by way of a motion to the trial court to withdraw that plea or on" PCR. Urbina, 221 N.J. at 527 (citation omitted). Appellate courts "owe no deference to the trial court that took th[e] plea." Id. at 528. "An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the elements of an offense." Ibid. (quoting State v. Tate, 220 N.J. 393, 404 (2015)). "Review of the law is plenary." Ibid.

Applying this well-established law, we conclude there is no merit to defendant's arguments. First, there is no reason to disturb the PCR court's factual finding that defendant did not request trial counsel file a direct appeal. The court held an evidentiary hearing on the issue and had the opportunity to weigh defendant's and trial counsel's credibility.

Our review of the transcripts of the PCR motion and the evidentiary hearing reveals that the argument presented to the PCR court was limited to whether defendant had requested trial counsel file a direct appeal. Thus, whether trial counsel's performance was deficient for not "consulting" defendant regarding a direct appeal was not squarely before the court. See Flores-Ortega, 528 U.S. at 478. "Generally, issues not raised below, even constitutional issues,

will not ordinarily be considered on appeal unless they are jurisdictional in nature or substantially implicate public interest." State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006).  Neither of those circumstances is present here.

Nevertheless, we conclude there is no merit to defendant's argument.  No rational defendant would have sought an appeal.  Indeed, defendant has not articulated grounds for an appeal here.  His assertions that he did not understand various issues are belied by his responses at the plea hearing.  Further, defendant did not "reasonably demonstrate[] to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.  Instead, defendant entered a "guilty plea" and "received the sentence bargained for." Ibid.  Under these circumstances, defendant fails to establish a prima facie claim of ineffective assistance of counsel based on the purported failure to seek an appeal.

As to defendant's guilty plea, like the PCR court, we are satisfied defendant's responses provided a sufficient factual basis concerning the elements of the offense charged. See Urbina, 221 N.J. at 526.  Leading questions are permissible when taking a plea, see Smullen, 118 N.J. at 415, and we are satisfied that defendant's responses established that he committed the crimes of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and

19

second-degree unlawful possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(b)(1). We discern no abuse of discretion in the PCR court's decision to forego an evidentiary hearing on this issue. See State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020) (holding "[w]e review a trial court's decision to grant or deny a defendant's request for a hearing under an abuse of discretion standard").

We add that defendant's reliance on Fisher is misplaced. In Fisher, "we [we]re satisfied that merely asking defendant if he read the formal language of the charge and understood th[e] language [wa]s not sufficient" to satisfy Rule 3:9-2. Fisher, 132 N.J. Super. at 315. Here, trial counsel and the prosecutor engaged in lengthy colloquies with defendant prior to the court's acceptance of defendant's guilty plea.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3825-23